IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FRED RUCKER, | ) | |
| | ) | |
| Plaintiff, | ) | No. 07 C 0091 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| ILLINOIS DEPARTMENT OF CHILDREN & | ) | |
| FAMILY SERVICES, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Fred Rucker, an African American male, has filed a pro se complaint against his current employer, the Illinois Department of Children and Family Services ("DCFS") alleging pay discrimination based on color and race in violation of Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 1981 et seq. Plaintiff's additional claims against DCFS of failure to promote, punitive damage liability, and claim to reopen prior untimely cases were dismissed with prejudice by this court on October 16, 2007. Pursuant to Fed. R. Civ. P. 56., defendant has moved for summary judgment against the surviving claim of pay discrimination. For the reasons discussed below, defendant's motion is granted.

## FACTS

The following facts are taken from uncontested facts in plaintiff's complaint, and the parties' L.R. 56.1 statements and attached exhibits. This court will consider the parties' statements containing only factual allegations, not legal conclusions or argumentative statements without proffered evidentiary support. See Mach Mold Inc. v. Clover Associates, Inc., 383 F.Supp.2d 1015, 1025 (N.D. Ill. 2005); Holder v. Ivanjack, 93 F.Supp.2d 933, 938 (N.D. Ill. 2000). The court will deem admitted a statement of fact where a denying party fails to provide

adequate support for the denial.  See L.R. 56.1(a), (b)(3)(B); see also Malec v. Sanford, 191 F.R.D. 581, 584 (N.D. Ill. 2000).  Further, the court will disregard additional facts claimed in the parties' responses that were not asserted in the pleadings.  See Malec, 191 F.R.D. at 584.  In deciding the motion for summary judgment and even applying the liberal standards applicable in pro se cases, see Henderson v. Sheahan, 196 F.3d 839, 845 (7th Cir. 1999), this court will consider responses that are appropriate according to the Rule 56 framework.  The court will disregard statements of fact that are not supported or improperly asserted.  See Federal Deposit Ins. Corp. v. Meyer, 781 F.2d 1260, 1267 (7th Cir. 1986) (plaintiff may not rely on his own speculative statements and beliefs).  The court will not rule at length on whether to strike specific paragraphs in the parties' briefs but will draw its facts only from portions that are appropriate.

Plaintiff, Fred Rucker filed his original complaint of discrimination in pay under Title VII in July of 2005. On or about January 8, 2007, after being issued a notice of right to sue by the Equal Employment Opportunity Commission, plaintiff filed a complaint in federal court claiming unequal pay due to race and color in violation of Title VII.  Specifically, plaintiff alleges that Paula Weidner is a "similarly situated" employee who earns $4,400 per month, $900 more per month than plaintiff.  Plaintiff learned of the pay discrepancy in March 2005 when the DCFS Office of Affirmative Action communicated it to him.

Plaintiff is a Caucasian male born in November 1944.  He received a Bachelor's degree in business from Arkansas AM&N in approximately 1972 or 1973 and a Master's degree in urban planning policy from the University of Illinois, Chicago in 1998.  Prior to working at DCFS, plaintiff's work history includes being employed as a collection officer, property

manager and club manager. In April 1989, plaintiff was hired by DCFS in Cook County under an Executive II job classification. His starting salary was $2,300 a month. From 1989 until 1992, plaintiff was responsible for ensuring that DCFS received proper claim reimbursements from the federal government for qualified foster children. Plaintiff was laid off from DCFS in September 1992 due to defendant's lack of funds and was re-hired eighteen months later in February 1994, again under an Executive II classification. He voluntarily accepted a salary of $2,393 per month. From 1994-1996, he worked in the business office and was also responsible for paying foster parents. Between 1996 and 1998 plaintiff supervised payments to foster parents and assisted his supervisor in developing and renewing contracts with DCFS vendors. From 1998 – 1999 plaintiff worked exclusively with his supervisor in assisting him with contract development.

In 1999 plaintiff was transferred to another Executive II position – "functional administrator" of Stores and Business operations. Plaintiff continues to hold that position today, and the responsibilities associated with the position remain unchanged since 1999. According to the job description and plaintiff's complaint, plaintiff manages the Cook County DCFS office supply room. In this capacity and under the general direction of the DCFS Senior Public Service Administrator, he ensures that "things run smoothly" in the supply room. Plaintiff's supply room services eighteen DCFS field offices. He personally supervises up to ten supply room employees. Within this supervisory role, plaintiff organizes, plans and executes, controls and evaluates the supply room operations. He also plans, reviews, supervises and coordinates, through a subordinate supervisor, clerical staff engaged in DCFS property control, stores, messenger service, maintenance of state owned vehicles and voucher payment processing. Plaintiff supervises one employee in the vouchering unit. Further, plaintiff monitors all supply

purchase requests and controls the movement and availability of staff and equipment within Cook County. In addition, he conducts quality assurance review of supply room staff to assure that the quality of the work produced by the staff meets established DCFS standards and complies with established policies and procedures. Plaintiff also assesses the effectiveness of procedures and recommends improvements in supply room operations. Finally, he is in charge of verifying the accuracy of vendor bills and signs them prior to payment.

In April 2003, the date of the alleged discriminatory pay-setting decision, plaintiff's salary was $3,585 per month. His current monthly salary is $4,425 per month. In his pay discrimination claim, plaintiff has identified Paula Weidner as a comparator. Weidner is a Caucasian female born in December 1963. She received a Bachelor degree in psychology and sociology from Maryville University in St. Louis, Missouri in 1996. Prior to working for DCFS, Weidner was employed by the Illinois Secretary of State, Department of Police, for ten years as an administrator and clerk within the Auto Theft Division. She was responsible for the account clerks and for the day-to-day operations for a multi-jurisdictional police task force. She was responsible for budget preparations, supply purchases, bill payments and the overall management of the Bellville Office. She also prepared all statistical/analytical state and federal reports regarding police arrests, prosecution and convictions pertaining to auto theft.

In April 2003, Weidner transferred with a promotion to DCFS from the Office of the Secretary of State, Department of Police. At the time of her transfer, her salary at the Secretary of State was $2,843. Her beginning salary at DCFS was set to $4,130 per month and was approved because Weidner's education and ten years of relevant experience were taken into consideration. Since her transfer, Weidner's job classification has been Executive II in the

4

DCFS Bureau of Program Operations and Community Service in St. Clair County, Illinois, Southern Region. As an Executive II, she was hired as the Business Operation Manager for the Southern Region.

In her position as Business Operation Manager, three account technicians and, until March 2005, one clerical employee reported directly to Weidner. She is responsible for training the account technicians. Weidner has duties relating to Bills and Budgets, where she assists with formulating, preparing, and monitoring the Southern Region budget, handles regional Court of Claims matters, and approves clothing vouchers of foster children and infant care equipment grants for the region. In Supplies and Office Management, her duties entail approving, acquiring, and sending all office supplies and equipment for the region, evaluating, recommending, and implementing office procedures, and training and evaluating subordinate activities. In her duties in Data Collection and Analytical Assessment, Weidner collects data related to fiscal monthly reports, enters data regarding adoptions and guardianships, and analyzes regional business and technical operations. She also has responsibility in Office Safety, where she oversees safety accreditation, resolves safety concerns reported by the twenty-one DCFS field offices in the Southern Region, and provides facility clearance for regional employees. Weidner is also in charge of coordinating court ordered paternity tests, and she pays all of the Southern Region's fiscal bills. Finally, she is responsible for taking a yearly inventory of all the furniture and equipment located in the twenty-one offices in the Southern Region. Weidner's salary as of January 2008 is $4, 865 per month.

Both Weidner and plaintiff are Executive II employees. Executive II is a payroll classification encompassing a variety of job titles and duties. Pay rates are determined by the

Department of Central Management Services ("CMS"), which is the state government department responsible for hiring procedures and salary administration of most state agencies, including DCFS. In April 2003, at the time Weidner transferred to DCFS, the salary range for Executive II was $2,843 to $5,125 per month.

## DISCUSSION

Plaintiff filed his complaint alleging pay discrimination against DCFS, based on color and race, claiming DCFS Administrators discriminated by manipulating a bona fide hiring and pay system and that the pay-setting decision made in hiring Weidner in 2003 was an example of the discrimination practiced by the defendant. Defendant has responded by moving for summary judgment against plaintiff.

A movant is entitled to summary judgment under Fed. R. Civ. P. 56 when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once a moving party has met its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Becker v. Tenenbaum-Hill Associates, Inc., 914 F.2d 107, 110 (7th Cir.1990). On a motion for summary judgment, the court considers the record as a whole and "must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inference in favor of that party." Allen v. Cedar Real Estate Group, LLP, 236 F.3d 374, 380 (7th Cir. 2001).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The non-moving party, however, "must do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), and go beyond allegations in the pleadings or upon conculsory statements in affidavits. Celotex Corp, 477 U.S. at 322-23. "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonable find for [the non-moving party]." Anderson, 477 U.S. at 252, 106 S.Ct. 2505.

Plaintiff is representing himself as a pro se plaintiff in this matter. Pro se status does not relax the evidentiary standards to be considered by the court. However, because plaintiff lacks familiarity with pleading formalities, at a general level this court must apply "less stringent standards" than it would to "formal pleadings drafted by lawyers." See Henderson v. Sheahan, 196 F.3d 839, 845 (7th Cir. 1999).

Plaintiff alleges that defendant committed a Title VII pay discrimination violation when it set Weidner's pay in 2003. He claims that, as a result, Weidner earns $900 per month more than he does. (However, uncontested salary records submitted by defendant indicate that the pay difference is smaller. Plaintiff earns $4,425 per month and Weidner earns $4, 865 per month. This amounts to a salary difference of $440 per month.) Defendant responds that to establish a claim of discrimination, plaintiff must present direct evidence of discrimination or, lacking that, indirect evidence of a prima facie case under a McDonnell Douglas burden shifting analysis.

7

See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); Mannie v. Potter, 394 F.3d 977, 983 (7th Cir. 2005).

Plaintiff offers no direct evidence of discrimination based on his race or color. Direct evidence is essentially an outright admission of discrimination based on one of the forbidden reasons covered in Title VII or a "mosaic of circumstantial evidence that directly points to a discriminatory intent." Davis v. Con-Way Transportation Central Express, Inc., 368 F.3d 776, 786 (7th Cir. 2004). It is evidence that proves discriminatory conduct without reliance on inference or presumption. Cerutti v. BASF Corp., 349 F.3d 1055, 1061 (7th Cir. 2003).

In the instant case, plaintiff claims to be offering direct evidence of discrimination. He alleges that the DCFS Director of Personnel was removed from his position because a federal investigation implicated him in "inappropriate hiring practices." This allegation is deficient, however, failing even to meet the scintilla of evidence standard discussed in Anderson, 477 U.S. at 252, 106 S.Ct. 2505. Further, its relevance is questionable. The evidence plaintiff proffers alleges only political misdeeds and makes no reference to allegations of racial discrimination by the defendant. Additionally, plaintiff claims that delays in the length of time DCFS takes to investigate grievances is further direct evidence of direct discrimination. But, the allegation is vague and does not specify a particular grievance. Thus, these claims do not disclose an admission by DCFS that an employment-related decision was made based on a prohibited animus, and no trier of fact would believe that direct evidence has been offered. See Rogers v. City of Chicago, 320 F.3d 748, 753 (7th Cir. 2003).

Plaintiff also fails to establish a prima facie case of discrimination through indirect evidence as prescribed by the McDonnell Douglas burden-shifting formula. See McDonnell

8

Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To do so in a race-based pay discrimination case, a plaintiff must present evidence that: (1) he is a member of a protected class; (2) he reasonably performed his job to his employer's expectations; (3) he was subject to an adverse employment action; and (4) other similarly situated employees outside the protected class were treated more favorably by the defendant. Michas v. Health Cost Controls of Ill., Inc., 209 F.3d 687, 693 (7th Cir. 2000). If the plaintiff meets this burden, the burden of production shifts to the employer to produce a legitimate non-discriminatory reason for its action. Davis, 368 F.3d at 784. If the employer produces a legitimate non-discriminatory reason, the plaintiff must then prove that the employer's articulated reason is mere pretext for discrimination.

DCFS does not dispute the first three elements of the McDonnell Douglas prima facie framework. The only question is whether Rucker established the last element – that despite being "similarly situated" to Weidner as an Executive II, her pay was set to a higher rate than his when she was hired in 2003. Defendant claims that Rucker and Weidner are not "similarly situated," and this court agrees.

To meet the burden of demonstrating that another employee is "similarly situated," a plaintiff need not show that other employees are "explicitly identical" to him, see Gates v. Caterpillar, Inc., 513 F.3d 680, 690 (7th Cir. 2008), but he must show that there is someone directly comparable in all material respects. Patterson v. Avery Dennison Corp., 281 F.3d 676, 680 (7th Cir. 2002). "[A] court must look at all relevant factors, the number of which depends on the context of the case." Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617 (7th Cir. 2000). "Factors to consider include whether the employee[ ] 1) had the same job description, 2) [was]

9

subject to the same standards, 3) [was] subject to the same supervisor, and 4) had comparable experience, education, and other qualifications." Salas v. Wisconsin Dept. of Corrections, 493 F.3d 913, 923 (7th Cir. 2007).

Plaintiff claims that Weidner is "similarly situated" to him as an Executive II, but the defendant asserts otherwise. In fact, plaintiff and Weidner are not "similarly situated" because that they do not have the same job title, job description, or job responsibilities. According the position description issued by DCFS, plaintiff is a "functional administrator" of the Stores/Business Operations in the Cook County DCFS office. In contrast, Weidner's is the Business Operation Manager for the Southern Region. Weidner and Plaintiff also differ in their job descriptions and day-to-day responsibilities. In his complaint, plaintiff explains that his job entails "manag[ing] the Supply room in Cook [C]ounty." The duties he describes in his pleading and those listed in his job description indicate that although he has numerous duties in administering and managing the supply room, his job is primarily limited to the supply room. In contrast, Weidner's duties, attested to in her affidavit and described in the DCFS issued job description, cover several areas, such as bill and budget, data collection and analytical assessment, and office safety. In addition, Weidner is involved in supply room management. In plaintiff's response to defendant's Local 56.1(a) statement of uncontested material facts, he himself states that "Paula [Weidner] has more duties than Fred Rucker. . . ."

Comparing Weidner's and plaintiff's duties reveals that Weidner's position is broader than plaintiff's, and she also has a higher level of responsibilities. For example, she is responsible for monitoring and providing input into the Southern Region operations budget, whereas in Cook County this function is not performed by plaintiff. Weidner is responsible for

ensuring that all vendors are legitimate and pay DCFS according to agency guidelines, whereas this function is not performed by plaintiff. Weidner performs a yearly inventory of all furniture and equipment located within the Southern Region, whereas in Cook County, this function is not performed by plaintiff.

With respect to education, plaintiff has a master's degree whereas Weidner does not. However, even though plaintiff has more education than Weidner, she may have a higher level of prior relevant experience than he does. With respect to experience, plaintiff has worked at DCFS since 1989. Prior to working in the supply room in 1999, plaintiff worked in a variety of administrative and clerical roles within DCFS, some relevant and some not to his current role in the supply room. In contrast, prior to being employed by DCFS, Weidner worked for ten years at the Illinois Secretary of State. Many of the duties she performed there, such as budget preparation, bill payments, and the management of statistical and analytical reports relate directly to the responsibilities she has at DCFS. Therefore, although plaintiff and Weidner both have experience prior to obtaining their current roles at DCFS, the quality of the experience is not the same.

In his complaint, plaintiff also points to a variance in salaries between himself and other employees holding master's degrees as evidence of racial discrimination in pay. He claims that the average employee holding a Master's degree earns approximately $2,000 more than he does. However, this court cannot determine whether these employees are "similarly situated" because plaintiff does not offer evidence on this matter.

For example, plaintiff has failed to meet his burden of demonstrating that a "similarly situated" employee received more favorable treatment, and plaintiff cannot establish a <u>prima facie</u> case of race or color discrimination for this allegation under the indirect method.

Even assuming, <u>arguendo</u>, that plaintiff can establish a <u>prima facie</u> case of race or color discrimination, defendant has set forth legitimate, nondiscriminatory reasons explaining why Weidner earns more than plaintiff. Executive II is a payroll classification that encompasses a variety of job titles and duties. Employees under the same payroll classification do not necessarily share the same job responsibilities or duties nor do they all work within the same department or receive the same salary. Each payroll classification has a set salary range determined by CMS. The salary ranges allow the agencies to compensate for higher levels of responsibility within the same title. Thus, although both Weidner and plaintiff are both classified as Executive II with DCFS, their experience, job descriptions, level of responsibility, volume of work and job functions differ. In fact, if matched up equally, plaintiff's position would fall below Weidner's position. Thus, Weidner's higher level of pay is justified.

Finally, plaintiff's claim of pay discrimination fails because he has failed to introduce evidence that defendant's actions were pretextual. To establish pretext, plaintiff must demonstrate that the reason articulated by DCFS for setting Weidner's pay at a higher rate than plaintiff's pay was a "deliberate falsehood." <u>Forrester v. Rauland-Borg Corp.</u>, 453 F.3d 416, 419 (7th Cir. 2006). "[A] pretext for discrimination . . . means something worse than a business error; pretext means deceit to cover one's tracks." <u>Davis</u> 368 F.3d at 784. But, as long as defendant's decision was not motivated by race discrimination in violation of Title VII, this court will not question the wisdom or appropriateness of an otherwise lawful personnel decision.

"[T]he focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered." Davis, 368 F.3d at 785.

No jury could reasonably conclude that defendant's actions are a pretext for discrimination. Weidner came to DCFS with experience and education where she received job responsibilities greater than plaintiff. She was compensated accordingly. Plaintiff has not offered any evidence that creates a triable issue as to whether defendant's actions were motivated by discriminatory animus.

## CONCLUSION

There is nothing in the record to support a finding that DCFS discriminated against plaintiff in violation of Title VII because of his race and color. Accordingly, the court grants defendant's motion for summary judgment.

**ENTER:** **August 29, 2008**

_____
**Robert W. Gettleman**
**United States District Judge**